**AMERICAN GRAPE GROWERS ALLIANCE FOR FAIR TRADE, et al., Plaintiffs,**

**v.**

**UNITED STATES, et al., Defendants.**

**Court No. 84–04–00575.**

United States Court of
International Trade.

Nov. 22, 1985.

**296**

Heron, Burchette, Ruckert & Rothwell, Thomas A. Rothwell, Jr. and James M. Lyons, Washington, D.C., for plaintiffs.

Michael P. Mabile, Asst. Gen. Counsel, and Wayne W. Herrington, Washington, D.C., for defendant U.S. Intern. Trade Com'n.

Covington & Burling, Harvey M. Applebaum, O. Thomas Johnson, Jr. and David R. Grace, Washington, D.C., and Wiggin & Dana, Shaun S. Sullivan, Mark R. Kravitz, New Haven, Conn., and Jack Dunnam, for defendant-intervenor Banfi Products Corp.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge:

The Court has before it plaintiffs' motion for an order enforcing the judgment in *American Grape Growers Alliance for Fair Trade, et al. v. United States*, 615 F.Supp. 603, 9 CIT ——, (1985) in which the Court held that certain antidumping and countervailing duty proceedings with respect to imported wine had been unlawfully terminated by the International Trade Commission (ITC).

The motion is opposed by the ITC as well as by the defendant-intervenors.

The grounds of objection are that the judgment has been appealed and is the subject of motions to stay the judgment which are pending before the Court of Appeals for the Federal Circuit.

The ITC argues that the motion is inappropriate and granting it would be usurpative of the powers of the appellate court. The defendant-intervenor Banfi Products Corporation goes further and sees a statutory bar to the granting of the motion in the provision of 28 U.S.C. § 2645.

■ The Court finds no merit in these contentions. If we assume the power of a court to enforce its judgments, then the pendency of an appeal, or the pendency, in conjunction with that appeal, of motions for stay of the judgment, have no bearing. The lower court cannot assume anything about what will happen on appeal, and for the lower court to refrain from acting on any suppositions about future events would be both presumptuous and improper. For this reason, the position of the ITC is rejected.

The argument of the defendant-intervenor is another matter. That argument, on its face, has some plausibility and its rejection has to be explained more fully.

The provision relied on by defendant intervenor reads as follows:

(c) *A decision of the Court of International Trade is final and conclusive, unless* a retrial or rehearing is granted pursuant to section 2646 of this title or *an appeal is taken to the Court of Appeals for the Federal Circuit* by filing a notice of appeal with the clerk of the Court of International Trade within the time and in the manner prescribed for appeals to United States courts of appeals from the United States district courts. [Emphasis supplied.]

If read literally, this provision would undo some of the most important provisions of the Customs Courts Act of 1980 and undermine one of the basic purposes of that Act, which was to give to this Court all the powers in law and equity of a district court. H.Rep. No. 1235, 96th Cong., 2d Sess. 50 (1980), U.S. Code Cong. & Admin. News 1980, p. 3729.

If read literally, this provision would nullify the meaningfulness of the grant to this Court, in 28 U.S.C. § 2643(c)(1), of powers of injunction, remand, declaratory judgment, and writs of mandamus and prohibition. A literal reading would obviously eliminate the essential power of a court to

deal with matters in which time is of the essence and delay would be unfair, unjust, or injurious.

Fortunately, the absurdity of a literal interpretation is easily avoided by referring to the legislative history of this provision which shows it to be simply a restatement of existing law, intended only to carry forward the law formerly contained in 28 U.S.C. § 2638(b) H.Rep. No. 1235, 96th Cong., 2d Sess. 62 (1980). This takes us back to a time before the enlarged jurisdiction and power of the Court, to a time when its jurisdiction consisted of cases involving questions of classification and valuation of merchandise. The same general language can be followed back to an Act of June 25, 1948, c. 646, 62 Stat. 982 (28 U.S.C. § 2637 (1948) in which three sections from the Tariff Act of 1930 (Secs. 501, 515 and 516 or 19 U.S.C. §§ 1501(b), 1515 and 1516(c)) were blended into one.

The original provisions dealt with the extremely limited jurisdiction of the Court in those times, prior to the Trade Agreements Act of 1979 and the Customs Courts Act of 1980. In deciding whether an article was a widget or a gadget, the only consequences of which would be whether an overpayment of duty would eventually be refunded, the enforceability of the lower court's judgment was normally not a pressing matter.

■■■ All of this leads the Court to conclude that the provision of 28 U.S.C. § 2645 relates to decisions of a type made under the old law, to those decisions in which there were no elements of possible injury to a party from postponing the effectiveness or enforceability of a judgment. The exact operation of this provision with respect to those judgments need not be decided here. It is clear however, that in cases of the present type, in which time is of the essence, and possible injury is the reason for the law and the reason for its speedy enforceability, judgments of this Court must be enforceable.

It should also be noted that if the provision of 28 U.S.C. § 2645 were read literally, it would also make the rules for obtaining stays in this Court and in the Court of Appeals for the Federal Circuit a superfluous matter. The taking of any appeal would operate as an automatic stay, rendering all rules on the subject of stays unnecessary. See for example, Rule 62 of the Rules of this Court and Rule 8 of the Federal Rules of Appellate Procedure. The fact that these rules have been in effect for a significant period of time without untoward developments is an indication of the meaningfulness of these rules.

This is enough of a catalogue of absurdity in light of the larger purposes of the law to indicate why the Court will not read 28 U.S.C. § 2645 in the manner argued by defendant-intervenor.

In a proper case, such as this one, the enforceability of this Court's judgments should be unquestioned, and a stay is the only way to put off that enforceability. The granting of a stay is within the sound discretion of the Court. *Lineker v. Dillon,* 275 F. 460 (N.D.Cal.1921) (a case of the same approximate vintage as the provision sought to be used here to nullify enforcement). A stay has already been denied by this Court.

■■ A court has inherent power to enforce its judgments and continue proceedings until its judgment is satisfied. *United States ex rel. Riggs v. Johnson County,* 6 Wall (73 U.S.) 166, 18 L.Ed. 768; *Wayman v. Southard,* 10 Wheat (23 U.S.) 1, 6 L.Ed. 253; *Boers v. Haughton,* (Pet) (34 U.S.) 329, 360, 9 L.Ed. 145, 157.

■■ The reasons given for denying the stay are also the reasons for requiring speedy obedience to the judgment. The necessity of the agencies resuming an investigation which the Court found was unlawfully terminated does not create difficulties or harm of any type comparable to the deprivation of rights of the party aggrieved.

The fact that those who are subject to the enforcement of this judgment are agencies of the government does not diminish the necessity of enforcement. See e.g. *Nader v. FCC,* 520 F.2d 182, 206–207 (D.C. Cir.1975). If anything, the government

should set an example for obedience to judgments of the Court.

The Court concludes by quoting a portion of President Abraham Lincoln's First Message to Congress which is inscribed on the wall outside one of the courtrooms of this Court, and which we obviously take seriously.

It is as much the duty of government to render prompt justice against itself, in favor of citizens, as it is to administer the same between private individuals.

For the reasons given above it is hereby

ORDERED, that plaintiffs' motion to enforce the final judgment of this Court is Granted and it is further

ORDERED, that defendant is directed to make determinations pursuant to Sections 703(a) and 733(a) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1671b(a) and 1673b(a), with regard to ordinary table wine from France and Italy no later than ten days from the date of this order.